(No. 90-CC-2030—)
ILLINOIS CORRECTIONAL INDUSTRIES, Claimant, *v.*
THE STATE OF ILLINOIS, Respondent.

*Order filed May 14, 1991.*

*Order filed March 24, 1992.*

ILLINOIS CORRECTIONAL INDUSTRIES, *pro se*, for Claimant.

ROLAND W. BURRIS, Attorney General (PHILLIP McQUILLAN, Assistant Attorney General, of counsel), for Respondent.

## ORDER

Montana, C.J.

Claimant Illinois Correctional Industries (hereinafter referred to as ICI) brought this claim seeking payment in the amount of $220,632.15 for various housekeeping, clothing, and dietary items allegedly "sold" to the Respondent's Department of Corrections (hereinafter referred to as DOC) for use at Stateville Correctional Center. In its standard lapsed appropriation form complaint, Claimant alleged that it made demand for payment to DOC but its demand was refused on the grounds that the funds appropriated for the payment had lapsed. The Respondent filed a stipulation agreeing to our making an award in the full amount sought. The case is now before us for approval of the stipulation.

This Court is not bound by such stipulations and based on the record as it now exists and other matters of public record of which we take judicial notice, we are hesitant to approve the stipulation at bar for the following reasons.

First, it is necessary to examine what the Claimant bringing this suit actually is. The Claimant is not a private corporation, partnership, or other business entity. ICI is only a division of DOC. Therefore what we have in this case is the DOC suing itself.

While the concept of the State suing itself may seem strange or even preposterous, it sometimes does serve a useful purpose from an accounting perspective in that it can serve as a vehicle for moving money among the

various funds. This Court has indulged such claims in the past primarily for the purpose of allowing an agency to collect on "debts" owed to a revolving fund from another agency or to make a petty cash fund whole after the appropriation from which payments could have been made has lapsed.

In the case at bar ICI is seeking payments into the Correctional Industries' revolving fund. The term "revolving fund" is used to describe a mechanism set up to finance an operation of State government for which the primary clients are State agencies. A service agency is designated to provide a good or service to other (user) State agencies. The service agency either produces the goods or services directly or purchases them from outside vendors. A fund is established to enable the service agency to sell to user agencies. Proceeds from the sales are deposited into the fund and are then available to buy more inventory or provide more services. Revolving funds are set up to make accounting transfers among agencies when it is decided that some support service ought to be provided on a centralized basis under one State agency, rather than allowing all agencies to purchase the goods or services from a private vendor. With such centralization, benefits of control, economies of scale, and efficient allocation of resources can be achieved. ICI's revolving fund finances operations at the several State penitentiaries which involve inmates manufacturing many items needed in the day-to-day operation of the prisons, for the governmental operations of all State agencies, and certain other not-for-profit entities. In addition to centralization, the ICI operation attempts to coordinate its work with vocational rehabilitation programs for inmates.

A revolving fund is created with an initial appropriation of general revenue monies intended to cover all of

the activity's start-up costs. The fund's prices are to be set at a level to allow the fund to break even. In theory, the fund should be self-sustaining. In practice, additional infusion of money is often required. In the case at bar, because DOC did not pay itself, the ICI fund is short $220,632.15 and DOC is in the seemingly incongruous position of having to sue itself.

In the ordinary case where an agency seeks reimbursement for its revolving fund by filing a lapsed appropriation claim (and DOC has been the only one to do so in recent years), the Court of Claims has gone along with the agency and treated the claim just like any other claim. Awards have been made and paid to ICI when other agencies did not pay for the goods produced by ICI and sold to the agencies because the appropriations for such payments lapsed. This case is different. From the vouchers attached to the complaint, we see that the purchases which gave rise to this claim were made in November of 1988 through the end of the fiscal year. This is not a case of just one instance of an oversight, but apparently a pattern which continued for two-thirds of the fiscal year. (It does not appear that DOC is seeking to charge itself interest under the Prompt Payment Act for what appears to have been an intentional disregard of its own bills.) This case is also different because DOC did not have enough money to pay itself. Purchases of this nature were to come from funds appropriated under the commodities line item appropriation. Both departmental reports on file show only $1,508.78 lapsed in that line item. The reports do indicate, however, that DOC had anticipated supplemental funding which never materialized.

The initial response to the claim was a recommendation, which is an unusual pleading. The recommendation reads in relevant part as follows:

"1. This is a claim against the Department of Corrections.

2. We have no reason to doubt that Claimant acted in good faith to provide the goods billed.

3. Although a Department may not obligate itself beyond the appropriation provided it, the Department, too, acted in good faith based upon its belief that supplemental funding would be provided to pay for the Constitutionally mandated needs of the inmates.

4. We therefore recommend that the Court of Claims recommend that the General Assembly appropriate funds to pay this claim."

A motion to withdraw the recommendation was filed shortly thereafter, which will be allowed, but some discussion of the recommendation will serve to better illustrate the Court's position. While the provision of the basic needs of food, clothing, and shelter, such as what likely consist of the purchases in this case, is constitutionally mandated, we are not persuaded that the basic needs were not paid for. We seriously question whether the constitutional mandate could be enforced in the constitutional courts when the State has already paid for the goods provided with ICI revolving fund monies. As for the recommendation that this Court recommend that the General Assembly appropriate funds to pay this claim, it is apparent from the departmental reports and recommendation that DOC sought the supplemental appropriation and the General Assembly refused. The Court of Claims' function is not to review the decisions of the General Assembly.

Thereafter a second response to the claim was filed. This response was a stipulation agreeing to our entering an award in the full amount claimed based on a second departmental report. This report indicates at paragraphs 11 and 12 that DOC had lapsed funds which could have been transferred to the commodities line item under the 2% transfer statute, Ill. Rev. Stat., ch. 127, par. 149.2. Those funds were said to be in the corrections recovery fund, No. 231-42692-1900-00-99. This proffered source

is not transferable under the 2% transfer statute and we cannot base an award on such.

However, it may be possible that the corrections recovery fund could have been used to pay the expenses directly without transfer into another line item. That fund is a State trust fund created pursuant to §6z—13 of the State Finance Act, Ill. Rev. Stat., ch. 142z—13. According to the terms of that statute, the money is held by the State Treasurer and "spent at the direction of the Director of the Department." The report indicates that over $1.1 million lapsed at the end of fiscal year 1989. However, the appropriation of 231 Trust Fund money to DOC does not appear in the State Comptroller's 1989 publication entitled Illinois Appropriations. We find it unlikely that the director's discretion to spend money from that fund is totally unfettered.

Before taking final action on the pending stipulation, we want the record augmented to show some evidence that the 231 Trust Fund money was appropriated in fiscal year 1989, how much of the appropriation lapsed that year, and whatever guidelines exist as to how that money may be spent. Further, we want the record to reflect why that trust fund money was not used to pay these bills during the 90-day grace period contained in §25 of the Finance Act following the end of the fiscal year 1989 when it became certain that supplemental funding would not materialize.

Since this claim arose the General Assembly has, in the appropriations process, reviewed the levels of funding for the ICI revolving fund in fiscal years 1990 and 1991 and made its decisions. We point out that any award made by this Court would have to be approved by the General Assembly prior to payment due to the size of the award and its source. Under no circumstances

is our final decision to be interpreted as a review of those legislative determinations.

If Claimant wants to continue prosecution of this claim, it is hereby ordered that the Claimant or Respondent supplement the record in accordance with this order within 60 days of the date of this decision; if Claimant fails to respond or request an extension within said time, this claim is denied. It is further ordered that the pending motion is granted.

## ORDER

MONTANA, C.J.

This court, having considered the Attorney General's motion to dismiss, and being fully advised in the premises,

It is therefore ordered that the claim of Illinois Correctional Industries against the State of Illinois Department of Corrections is dismissed.

So ordered.